GIDEON OLIN, Esquire,

*against*

NATHANIEL CHIPMAN, Esquire.

(Reserved Case.)

Opinion of the
Court on the
reserved case,
*Olin v. Chipman,*
argued *June* ad-
journed term,
*Bennington*
County, A. D.
1801, as report-
ed in the first
volume, p. 167.
ACTION on the case for a libel.

At this term this cause was reargued, there being a new bench ; but as the arguments of the counsel did not materially vary from those addressed to the former Judges as reported, p. 167. of the first volume, they are omitted.

## Opinion of the Court.

The plaintiff has declared in case upon a libel alleged to have been written and published by the defendant, " *of the meaning and purport following, to wit.*" In support of the declaration, the plaintiff offered to read in evidence to the Jury *The Green Mountain Patriot*, a paper printed in *Peachum*, said to contain the libel. An exception was taken by the defendant to its being read, as it varied from the libel declared upon in the following particulars :

First. In the declaration the libel was headed " Electionecring Communication ;" the word " electioneering," it appearing in evidence, being inserted by the printers to notify their readers of the subject matter of the piece.

Secondly. That the declaration alleged the libel to contain the following words, *the* national government ; but the paper adduced contained the words, *our* national government.

Thirdly. That the declaration contained *try co-loured* in two words, in lieu of *tricoloured* in the paper.

Olin v. Chipman.

On exception being taken by the counsel for the defendant for these variances, it was ordered by the Court, that the trial should proceed, and the paper produced be read in evidence to the Jury, and that the verdict which might be found should be subjected to the opinion of the Court, first, whether the said variances, or any of them, are fatal in point of law against the plaintiff; that is, if they are of such importance as would, by judgment of Court, have precluded the libel in the newspaper from being read in evidence.

Secondly. If such variances, or any of them, are fatal, would the Court have permitted the plaintiff so to have amended his declaration as would have suited the mode of declaring to the evidence.

Upon the first point, the Court are of opinion, that the definite article, in *the* words, confines the plaintiff to the precise words; and what follows, to wit, " *of the meaning and purport following*," must be considered as the sense the plaintiff chooses to annex to these words; but omitting the article " *the*," and reading, " in words of the meaning and import following, to wit," would place it upon the substance. This distinction may seem nice, but is certainly well supported by the authorities cited.

Upon inspection of the whole declaration it appears, that the plaintiff, by the insertion of various *innuendoes*, illustrative of his conception of the sense and meaning of the defendant's expression in the libel, formerly conceived that he had recited the precise words of the libel; for if he had understood that

Olin
v.
Chipman.

he had declared only on the sense and substance of the words, it would have been unnecessary, by the introduction of *innuendoes*, to explain what an allowable circuity or change of expression, under the latitude of a declaration on the substance, would have rendered explicit without them. The Court, therefore, consider the declaration to be upon the precise words. It remains to be considered, whether the variances between the declaration and the paper offered in evidence, are of such importance as would, by judgment of the Court, have precluded the latter from being read in evidence on the trial.

In a declaration *in hæc verba*, the plaintiff must recite the precise words of the libel. The term " electioneering," as it merely headed the piece, and tended rather to devest the libel of its malicious force, as it indicated, its publication on an occasion when the truth is not to be expected, and leasing is held venial in political ethics, might have been considered as no material variance, and the inserting in the declaration " *try coloured*" for " *tricoloured*," might seem rather to partake of that over nicety which is repelled by the maxim, *qui hæret in literâ hæret in cortice.* But the inserting of *our* in the designation of a general government, in lieu of *the*, which conveys a different, and certainly more illiberal meaning, when taken into connection with the libellous context, is a material variance. The action for slander, where the libel has been declared upon *in hæc verba*, has often been defeated for variances less material. If the reserved case had rested on this point, judgment must have been for the defendant.

But upon the second point, whether the Court would have permitted such variances to have been

4

amended: the Court, when they consider our statute of jeofails, peruse the *English* authorities, and call to mind the practice of this Court ever since the passing this beneficial act, and more especially the recent decision of the Court in the case of *Harris* v. *Lawrence et al.* decided at the same term in which this case was reserved, cannot retain a doubt that these defects are amendable. In this case, the Court ought especially to extend the purview of the statute liberally to the plaintiff. The grand and weightiest objection to an amendment of a declaration, consists in the surprise it may occasion to the defendant. Here it will be recollected, that on a former occasion exception had been taken to these variances by the defendant. The plaintiff had moved for leave to amend, and had amended on payment of costs. His intention to amend from the precise words to the substance, is obvious; for he has ever insisted, that he had effected this in all his arguments. It appears, however, that he has misconceived the effect of his amendment. His declaration still confines him to the precise words. But assuredly, after this intention in the plaintiff to amend from the precise words to the substance, and his persisting that he had so amended, the defendant cannot complain of any surprise.

Let the verdict be recorded as accepted by the Court, and judgment entered for the plaintiff accordingly.

Olin
v.
Chipman.

Vide *ante,* vol. 1. p. 156.